**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LLOYD'S AMERICA, INC. AND CORPORATION OF LLOYD'S** | § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § § | |
| **ERIC RAMIREZ, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, INC., CERTAIN UNDERWRITERS OF LLOYD'S LONDON, LLC,** | § § § § § | **CIVIL ACTION NO. 4:23-cv-4306** |
| **Defendant.** | § | |

## COMPLAINT

Plaintiffs Lloyd's America, Inc. and Corporation of Lloyd's bring this Complaint for trademark infringement, trademark dilution, unfair competition, counterfeiting, false advertising, intentional interference with business relations and defamation against Defendants Eric Ramirez and two entities he formed and registered with the Texas Secretary of State using the names Certain Underwriters at Lloyd's London, Inc. and Certain Underwriters of Lloyd's London, LLC. In support hereof, Plaintiffs state as follows:

## INTRODUCTION

1.      The Corporation of Lloyd's, also known as the Society of Lloyd's, Lloyd's of London, and Lloyd's, a body incorporated by the Lloyd's Act 1871 ("Corporation"), is the central administrative body of the oldest continuously active insurance marketplace in the world (the Corporation and the marketplace are referred to herein collectively as "Lloyd's"). The Corporation, created through Parliamentary Acts of the United Kingdom of Great Britain and Northern Ireland, specifically the Lloyd's Acts between 1871-1982, provides the building and

personnel necessary to the market's administrative operations. The Corporation is run by the Council of Lloyd's, which promulgates Byelaws, regulates the Lloyd's marketplace and generally controls the market's administrative operations. Insurance policies are issued at Lloyd's (*i.e.*, in the Lloyd's marketplace) for risks around the world by certain groups of underwriters (known as "syndicates"), acting independently from the other underwriters in the market, with several liability, which are identified on the policy as "Certain Underwriters at Lloyd's London" under the specific policy being issued.  7 New Appleman on Insurance Law Library Edition § 80.03 (2023).

2.    Lloyd's America, Inc. ("Lloyd's America"), the United States subsidiary of the Corporation, is the liaison between Lloyd's and the United States insurance industry. Lloyd's America's role is to provide marketing services for the Lloyd's insurance market in America as well as media relations and regulatory support to the managing agents. Lloyd's America provides statistical and other information as required by United States insurance regulatory bodies.

3.    Defendant Eric Ramirez, a Texas-licensed public insurance adjuster, reportedly entered into a contingency agreement with a policyholder insured by Certain Underwriters at Lloyd's London subscribing to Policy No. PRPNA1701690. Ramirez claimed that his client was owed more than $26 million for property damage under that policy.

4.    Ramirez was incorrect. The dispute is believed to have been submitted to the appraisal process provided under the policy, pursuant to which the damages were established to be approximately $2.4 million.

5.    Aggrieved, Ramirez has waged war on Lloyd's and Lloyd's America. Ramirez has filed baseless lawsuits, made countless administrative complaints, and accused Lloyd's of illegal business practices and criminal behavior all in an effort to force payment of additional "damages" beyond those determined by the appraisal panel.

6.      As part of this strategy, Ramirez now has formed entities in Texas using Plaintiffs' names and trademarks. Specifically, Ramirez formed entities using the names "Certain Underwriters at Lloyds London, Inc." and "Certain Underwriters of Lloyds London, LLC." Ramirez has also registered those entities to do business in California.

7.      Ramirez has even used one of those newly created entities, Certain Underwriters at Lloyds London, Inc., to apply to federally register the trademark CERTAIN UNDERWRITERS AT LLOYDS LONDON. Minus Ramirez's punctuation error, the policies issued through the Lloyd's marketplace are offered under that name, *i.e.*, "Certain Underwriters at Lloyd's London" subscribing to a specific policy.

8.      Ramirez has taken these actions as revenge for the perceived wrongs of Lloyd's and to obtain leverage over Plaintiffs to extort additional payments, including attempting to use his newly formed companies to obtain service of process on insurers at Lloyd's.

9.      Plaintiffs bring this action to stop Defendants from infringing and diluting their trademarks, from interfering with their business relations, and from defaming them.

## **PARTIES**

10.      Lloyd's America, Inc., is a New York Corporation with its principal place of business in New York.

11.      The Corporation of Lloyd's was created through the Lloyd's Acts of 1871-1982 of the United Kingdom of Great Britain and Northern Ireland. The Corporation has its principal place of business in London, England.

12.      Eric Ramirez is a resident of Houston, Texas and may be served with process at 1810 Main Street; #417; Houston, Texas 77058 or 18101 Point Lookout, #143; Houston, Texas 77058.

13.     Defendant Certain Underwriters at Lloyds London, Inc. is a Texas corporation formed by Defendant Ramirez on May 26, 2023. Certain Underwriters at Lloyds London, Inc. may be served with process through its agent, Eric Ramirez at 1810 Main Street; #417; Houston, Texas 77058 or 18101 Point Lookout, #143; Houston, Texas 77058.

14.     Defendant Certain Underwriters of Lloyds London, LLC is a Texas Limited Liability Company formed by Defendant Ramirez on June 21, 2023. Upon information and belief, Ramirez, a Texas resident, is the only member of that LLC. Ramirez may be served with process at 1810 Main Street; #417; Houston, Texas 77058 or 18101 Point Lookout, #143; Houston, Texas 77058.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; and 28 U.S.C. § 1331 as it involves a federal question.

16.     This Court has supplemental or pendant jurisdiction over Plaintiffs state law claims because the claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendants because they are all citizens of Texas.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

### Lloyd's of London and Lloyd's are Famous Marks

19.     Lloyd's is an insurance and reinsurance market that is the most famous brand in the insurance underwriting field.

20.     Lloyd's is not an insurance company, but is a corporate body governed by the Lloyd's Act of 1871 and subsequent Acts of Parliament. It operates as a partially-mutualized marketplace within which multiple financial backers come together to pool and spread risk.

21.     The Lloyd's marketplace has its roots at Edward Lloyd's coffee house. The marketplace was operating out of that coffee house as early as 1688. We know the 1688 date because the marketplace was referenced in the *London Gazzette* published that year.

22.     In its early years, Lloyd's invented the modern maritime insurance market.

23.     In 1871, the first Lloyd's Act was passed in Parliament, incorporating the Society of Lloyd's as a statutory corporation for the first time and establishing its first detailed constitution – making it illegal for anyone who was not a recognized Lloyd's underwriting member to sign their name to a Lloyd's policy.

24.     By the 19th Century, Lloyd's was active in the American insurance market. In 1872, Lloyd's cemented its place as the premier marketplace provider of insurance in America when its insurers paid £1,000,000 in claims after a Boston fire.

25.     In 1906, insurers at Lloyd's paid more than £40 million for claims after the San Francisco earthquake. That represents more than £790 million in today's economy.

26.     In 1911, insurers at Lloyd's wrote its first aviation policy. Among its many famous aviation policies, insurers at Lloyd's insured Charles Lindbergh and his monoplane, the Spirit of St. Louis, for his non-stop flight from America to Europe.

27.     Over the years, insurers at Lloyd's have insured numerous famous individuals, ships, and buildings. Lloyd's insurers provided insurance for the Titanic, the Exxon Valdez, and the Hindenburg.

28.     During the Civil Rights Movement, insurance agents cancelled the auto insurance of individuals providing carpooling during the Montgomery Bus Boycott. Insurers at Lloyd's stepped in and provided insurance for those drivers.

29.     After the attacks of 9/11, insurers at Lloyd's honored billions of dollars of policies. Then United States Treasury Secretary John Snow spoke movingly about how Lloyd's supported the United States, declaring, "We are indebted to you."

30.     Lloyd's is a key player in insuring the energy business of the Gulf South. After the 2010, Deepwater Horizon sinking, insurers at Lloyd's paid out more than $600 million.

31.     Insurers at Lloyd's long history of insuring high-profile risks and quickly and fairly paying out claims has earned it a reputation as offering the highest quality insurance offerings.

32.     Today, the Lloyd's marketplace operates out of a world-renowned building on Lime Street in London. Queen Elizabeth opened the building. Lloyd's also acts out of various offices throughout the world, including in the United States.

33.     Throughout its history, Lloyd's has developed widespread public recognition.

34.     Lloyd's is routinely mentioned during sporting telecasts as its insurers have insured various athletes against injury.

35.     Lloyd's has entered the public consciousness through its involvement with entertainers. The policies insuring Toni Braxton, Celine Dion, Bob Dylan, Whitney Houston, and Bruce Springsteen's vocal chords were written through Lloyd's. Its underwriters have insured Marlene Dietrich, Betty Grable, Brooke Shields, Tina Turner, and Mary Hart.

36.     A 1936 film *Lloyd's of London* about the insurance market starred Tyrone Power. The film was nominated for two academy awards.

37.     Lloyd's has featured in the films *Around the World in 80 Days* and *To Catch a Thief*.

38.     All Lloyd's syndicates share market ratings of A (excellent) from A.M. Best, AA-(very strong) from Fitch Ratings, AA (very strong) from Kroll Bond Agency, and A+ (strong) from Standard & Poor's.

39.     In 1979, the Corporation registered LLOYD'S OF LONDON as a federal trademark, Trademark Registration No. 1118425. That trademark is registered in International Class 036.

40.     That federal registration is current, having been most recently renewed on May 26, 2020.

41.     In 2004, the Corporation registered LLOYD'S as a federal trademark. Trademark Registration No. 2832189. That trademark is registered in International Class 036.

42.     That federal registration is current, having been most recently renewed on April 8, 2014.

### Corporation of Lloyd's and Lloyd's America

43.     Lloyd's America is the United States arm of the Corporation.

44.     Lloyd's insurers comprise the largest surplus lines market in the United States.

45.     Lloyd's insurers are key providers of reinsurance in the United States.

46.     Lloyd's America has authorization to use all the Corporation's branding and trademarks in the United States.

47.     Lloyd's America previously employed one individual in Texas. At present, Lloyd's America does not have a physical presence in Texas and does not employ any people in Texas.

48.     Lloyd's only connection to Texas is that some insurers in its market issue insurance policies to Texas residents and/or on risks located in Texas.

**Eric Ramirez Targets Lloyd's**

49.     Defendant Eric Ramirez is a Texas-licensed public insurance adjuster. Ramirez is either an employee or the owner of L.A. Public Insurance Adjusters, Inc.

50.     As a public insurance adjuster, Ramirez markets his services to assist policyholders in obtaining coverage under their insurance policies.  Ramirez in particular markets his services to assist policyholders in maximizing their recovery on roofing claims.  As a public adjuster, Ramirez is aware that the underwriters at Lloyd's have business relations with companies throughout the United States, including in Texas.

51.     Ramirez has entered at least one, and likely more, contingency agreements with policyholders insured by various underwriters at Lloyd's.

52.     As part of these agreements, Ramirez generally agrees with his client to be paid a percentage of the policyholder's recovery for the claims they recover under their insurance policy. These payments, to the extent they are due, are not due from the insurance provider, such as the certain underwriters at Lloyd's who have insured a particular risk, but from Ramirez's client. As a public adjuster, Ramirez has no relationship with Lloyd's.

53.     Through his work with L.A. Public Insurance Adjusters, Ramirez was displeased with the resolution of a particular insurance claim for his client.

54.     Based on that displeasure, Ramirez has taken actions which are intended to force a greater payment and are designed to interfere with Plaintiffs' business relationships, damage Plaintiffs' reputation and trademarks, and confuse consumers who put their trust in Lloyd's.

55.     Ramirez has filed various unfounded lawsuits related to his displeasure. Unsurprisingly, Ramirez has found no relief in the Courts and such suits have been dismissed under Rule 91a of the Texas Rules of Civil Procedure for failing to state a claim which has any

basis in law or fact. After dismissal, Ramirez filed substantially the same suit against the same parties, adding only "Certain Underwriters at Lloyd's London."

56.     Apparently dissatisfied with his legal options, on May 26, 2023, Ramirez formed the Defendant Texas Corporation "Certain Underwriters at Lloyds London." He then formed a limited liability company with the similar name: "Certain Underwriters of Lloyds London, LLC." Next, he then filed an assumed name certificate that "Certain Underwriters at Lloyds London, Inc." is doing business as "Certain Underwriters of Lloyds London." In addition to forming these entities in Texas, Ramirez has also registered his corporation and LLC to do business in California.

57.     On June 6, 2023, Ramirez, acting on behalf of this newly formed entity, Defendant Certain Underwriters at Lloyds London, Inc., filed an application to register CERTAIN UNDERWRITERS AT LLOYDS LONDON as a federal trademark.

58.     As part of the filing, Ramirez filed a sworn statement with the United States Patent and Trademark Office that CERTAIN UNDERWRITERS AT LLOYDS LONDON was being used in commerce for "insurance underwriting services for all types of insurance." The application seeks registration in International Class 036.

59.     In his application to the United States Patent and Trademark Office, Ramirez has sworn, subject to the penalties of perjury, that the applicant is engaged in underwriting or insurance services using the purported trademark, "Certain Underwriters at Lloyds London." This statement is knowingly false, and Ramirez is infringing the LLOYD'S OF LONDON and LLOYD'S registered trademarks.

60.     From Ramirez's voluminous correspondence, it appears that the trademark application is not for the purposes of protecting a trademark that is in use by Defendants, but that the application is solely for the purpose to maliciously cause damage to Plaintiffs' federally

registered mark, common law marks, and business and to leverage a payment of a claim which has already been resolved through the appraisal process to which his client agreed to be bound.

61.     Upon being notified that his scheme and application have been discovered and that his use of the marks violated Plaintiffs' rights, Ramirez denied that he is currently offering the very services he has sworn, under oath, that he is offering, stating that he has no intention to keep the names of the companies he has registered, seeking to use the companies he has formed to obtain service of process for his lawsuits, and threatening to file allegations with the IRS, FBI, Texas Secretary of State.

## Defendants' Trade Name and Purported Trademark are Willfully Confusing to Consumers.

62.     Ramirez intentionally chose the trade name and purported trademark at issue in order to exact revenge on Lloyd's and Lloyd's America and to interfere with their business.

63.     By choosing a trade name and purported trademark that is confusing to consumers, Defendants seek to harm Plaintiffs.

64.     Defendants trade name and purported trademark are confusingly similar to the registered marks, LLOYD'S OF LONDON and LLOYDS's, and the common law mark CERTAIN UNDERWRITERS AT LLOYD'S LONDON.

65.     Ramirez, as a public insurance adjuster, is well aware that Plaintiffs issue insurance policies as Certain Underwriters of Lloyd's of London subscribing to a specific policy.

66.     Because Lloyd's is a marketplace, the Corporation does not offer insurance. Instead, the insurance policies issued in the Lloyd's market are issued by certain underwriters at Lloyd's London, *i.e.*, those specific underwriters who have underwritten the policies at issue. The Fifth Circuit has explained Lloyd's operations and that it is proper for lawsuits regarding policies issued through Lloyd's to be filed on behalf of or against "Certain Underwriters at Lloyd's, London

subscribing to Insurance Policies [specifically enumerated]." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857-866 (5th Cir. 2003).

67.     "Certain Underwriters at Lloyd's London" subscribing to a policy is simply the proper description of the various groups that underwrite policies from the Lloyd's marketplace. As a result, "Certain Underwriters at Lloyd's London" is the proper way in which to identify the underwriters of a policy; thus, "Certain Underwriters at Lloyd's London" have been named in twenty-three 2023 federal court cases filed in Texas. In September 2023 alone, "Certain Underwriters at Lloyd's London" was used to reference the parties to at least sixty-two federal lawsuits nationwide. "Certain Underwriters at Lloyd's London" have been parties to federal lawsuits in all 50 states, Puerto Rico, and the U.S. Virgin Islands.

68.     Defendants' actions in adopting the monicker Certain Underwriters at Lloyds London is meant to intentionally mislead consumers and to cause interference with service of lawsuits.

### Ramirez's Conduct Interferes with Lloyd's Business Relations and Defames Lloyd's and Lloyd's America.

69.     Despite knowing about the contractual relationships of the underwriters at Lloyd's, Ramirez has taken actions which are intended to interfere with those relationships and confuse consumers who put their trust in Lloyd's.

70.     First, as described herein, Ramirez has adopted a corporate name, trade name, and purported trademark that are designed to interfere with Lloyd's business, and Lloyd's itself.

71.     According to Ramirez's filings with the United States Patent and Trademark Office, these confusing names are being used to directly compete with the underwriters at Lloyd's.

72.     Additionally, the creation and attempt to register these names is likely to cause confusion among the clients that trust Lloyd's.

73.     Defendant Ramirez has specifically stated that he has been notified for service of process in lawsuits naming Certain Underwriters at Lloyd's London and has proposed naming certain attorneys who have represented those underwriters in specific lawsuits to be the registered agent for his newly formed companies.

74.     On November 9, 2023, Ramirez sent an e-mail to the IRS, FBI, Texas, California, and New York Attorney Generals, various "Lloyds Counsels," "Clients Counsels," and "LAPIA's Client" stating that **he has a responsibility to appoint agents to accept lawsuits in Texas and California on behalf of Certain Underwriters at Lloyds London and Certain Underwriters of Lloyds London because he owns those entities**. This demonstrates Ramirez's intention to create confusion for entities insured through the Lloyd's market.

75.     Lloyd's reputation is for quickly and fairly resolving claims. Of course, Lloyd's cannot quickly resolve claims that are incorrectly served on Ramirez and his intentionally confusing entities.

76.     Ramirez is also aware that Lloyd's, through its underwriters, has business relationships with insurance appraisers.

77.     Again, Ramirez has intentionally targeted those relationships by filing baseless claims against them.

78.     For instance, appraiser, Kevin Hromas, worked with certain underwriters at Lloyd's on a claim where Ramirez had a contingency arrangement.

79.     Unhappy with the ultimate resolution of that matter, Ramirez has filed claims with law enforcement, including the FBI, IRS, Commodity Futures Trading Commission, Texas Attorney General, and New York Attorney General, that Hromas and "Certain Underwriters at Lloyd's London" are violating the Racketeer Influenced and Corrupt Organizations Act. Ramirez has also made baseless claims that Lloyd's has not paid taxes appropriately.

- 12 -

PD.43694205.1

80.     Ramirez's intent is clear from his actions. Ramirez filed a frivolous lawsuit against Raizer Slania LLP and Andrew Slania, the law firm that shared a client with Ramirez. That lawsuit was dismissed. Ramirez then refiled the same lawsuit in Harris County Justice Court against Raizer Slania, LLP and Andrew Slania, adding Certain Underwriters at Lloyd['s] London as parties.

81.     On November 9, 2023, Ramirez sent an e-mail to a number of federal and state government officials alleging Lloyd's was "not authorized in many states to transact business for over 30 years." The e-mail also states that "Certain Underwriter[s] at Lloyd['s] London and Kevin Hromas and Associates have performed illegally together for over 10 years in Texas deceiving Policyholders, Public Insurance Adjusters, Courts, Judges/Umpires, etc., some might consider this as Racketeer Influenced and Corrupt Organizations Act (RICO)." (emphasis in original removed).

82.     Ramirez sent this e-mail not only to various government officials, he also sent the e-mail to multiple private citizens, including attorneys at the law firms Donato, Brown, Pool, & Moehlmann, Martin, Disiere, Jefferson, & Wisdom, Raizner Slania LLP, Mendes & Mount LLP, and Foley & Lardner LLP, and to employees of BNC Equities, a Dallas real estate investment and property management company, and unidentified individuals with Gmail, Yahoo, and AOL e-mail addresses, respectively.

83.     These communications to third parties are defamation per se because they are false statements regarding Plaintiffs' business and accuse Plaintiffs of committing a crime.

**Claim I**
**Federal Trademark Infringement & Unfair Competition**
**(Lanham Act)**

84.     The foregoing paragraphs are incorporated by reference, as if fully restated herein.

85.     LLOYD'S OF LONDON (Reg. No. 1118425), and LLOYD'S (Reg. No. 2832189) are a valid and legally protected federally registered trademarks.

86.     The Corporation is the owner of the registered marks.

87.     Lloyd's America, as the American branch of the Corporation has the exclusive right to use LLOYD'S OF LONDON and LLOYD'S in the United States.

88.     Defendant Ramirez has sworn that his corporation Certain Underwriters at Lloyds London is doing business as Certain Underwriters of Lloyds London and using in commerce the purported trademark CERTAIN UNDERWRITERS AT LLOYDS LONDON for the purpose of offering services in the field of underwriting insurance.

89.     Defendants' using "Certain Underwriters of Lloyds London" and "Certain Underwriters at Lloyds London" causes a likelihood of confusion among consumers. This confusion is exacerbated to the extent these marks are used in the field of insurance underwriting as the application to register CERTAIN UNDERWRITERS AT LLOYDS LONDON claims.

90.     Defendants' actions have been done purposefully, willfully, intentionally, and with malice.

91.     Defendants' actions are the direct and proximate cause of harm to Plaintiffs.

92.     Plaintiffs are entitled to their actual compensatory damages, the disgorgement of Defendants' profits, and the cost of bringing this action, including attorney's fees.

93.     Defendants' actions are willful and deliberate, thereby making this an exceptional case pursuant to the Lanham Act. Because this is an exceptional case, Plaintiffs are entitled to an award of attorney's fees and treble damages.

94.     Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London" and "Certain Underwriters at Lloyds London" and "Lloyd's" or "Lloyd's London."

95.     Plaintiffs are entitled to recover the costs of corrective advertising in order to make clear that none of Defendants' conduct was authorized or affiliated with Plaintiffs.

PD.43694205.1

## Claim II
## Texas Trademark Infringement
## (Tex. Bus. & Com. Code § 16.102)

96. The foregoing paragraphs are incorporated by reference, as if fully restated herein.

97. In addition to their federal trademark rights, the Corporation and Lloyd's America have common law trademark rights in "Certain Underwriters at Lloyd's London."

98. For decades, Texans and others around the world have recognized that those policies offered by "Certain Underwriters at Lloyd's London" are underwritten by groups of underwriters through the Lloyd's marketplace. Texans know that the policies are written by "Certain Underwriters at Lloyd's London," are trustworthy and that the Underwriters are reviewed, qualified, and that policies underwritten at the Lloyd's marketplace are trustworthy and reliable.

99. The Corporation and Lloyd's America use in commerce the common law trademark "Certain Underwriters at Lloyd's London" to offer the underwriting of insurance policies by underwriters within the Lloyd's market.

100. Defendant Ramirez has sworn that his corporation Certain Underwriters at Lloyds London is doing business as Certain Underwriters of Lloyds London and using in commerce the purported trademark CERTAIN UNDERWRITERS AT LLOYDS LONDON for the purpose of offering services in the field of underwriting insurance.

101. Defendants' registration and use of Certain Underwriters of Lloyds London and Certain Underwriters at Lloyds London causes a likelihood of confusion among consumers.

102. Defendants' actions were undertaken with actual knowledge and in bad faith.

103. Defendants' actions are the direct and proximate cause of harm to Plaintiffs.

104. Plaintiffs are entitled to their actual compensatory damages and the disgorgement of Defendants' profits.

PD.43694205.1

105.     Because Defendants' actions were taken with actual knowledge and/or were done in bad faith, Plaintiffs are entitled to treble damages and the cost of bringing the action including attorney's fees.

106.     Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London" and "Certain Underwriters at Lloyds London" and "Lloyd's" or "Lloyd's London"

### Claim III
### Federal Trademark Dilution by Blurring
### (Lanham Act)

107.     The foregoing paragraphs are incorporated by reference, as if fully restated herein.

108.     LLOYD'S OF LONDON and LLOYD's are valid and legally protected federally registered trademarks, that are famous as defined by the Lanham Act.

109.     The Corporation is the owner of those marks.

110.     LLOYD'S OF LONDON and LLOYD'S are generally known by the consuming public. The Corporation is the owner of those marks.

111.     Lloyd's America, as the American branch of the Corporation has the exclusive right to use LLOYD'S OF LONDON and LLOYD'S in the United States.

112.     Defendant Ramirez has sworn that his corporation Certain Underwriters at Lloyds London is doing business as Certain Underwriters of Lloyds London and using in commerce the purported trademark CERTAIN UNDERWRITERS AT LLOYDS LONDON for the purpose of offering services in the field of underwriting insurance.

113.     Defendants' actions weaken and impair the distinctiveness of LLOYD'S OF LONDON and LLOYD'S.

114.     Defendants willfully seek to trade on Lloyd's reputation.

115.   Defendants willfully seek to cause dilution of LLOYD'S OF LONDON and LLOYD'S.

116.   Defendants willfully seek to interfere with the use of LLOYD'S LONDON and LLOYD'S, to cause confusion in the market, and to interfere with the business of Plaintiffs.

117.   Defendants' actions are the direct and proximate harm to the mark LLOYD'S OF LONDON and LLOYD'S.

118.   Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London" and "Certain Underwriters at Lloyds London" and "Lloyd's" or "Lloyd's London."

119.   Because Defendants actions were willful, Plaintiffs are entitled to compensatory damages, treble damages, and the costs of bringing this action, including attorney's fees.

### Claim IV
### Federal Trademark Dilution by Tarnishment
### (Lanham Act)

120.   The foregoing paragraphs are incorporated by reference, as if fully restated herein.

121.   LLOYD'S OF LONDON and LLOYD'S are valid and legally protected federally registered trademarks, that are famous as defined by the Lanham Act.

122.   LLOYD'S OF LONDON and LLOYD'S is generally known by the consuming public.

123.   The Corporation is the owner of those marks.

124.   Lloyd's America, as the American branch of the Corporation has the exclusive right to use LLOYD'S OF LONDON and LLOYD'S in the United States.

125.   Defendant Ramirez has sworn that his corporation Certain Underwriters at Lloyds London is doing business as Certain Underwriters of Lloyds London and using in commerce the

purported trademark CERTAIN UNDERWRITERS AT LLOYDS LONDON for the purpose of offering services in the field of underwriting insurance.

126.    Defendants' actions are offensive to the goodwill associated with the marks LLOYD'S OF LONDON and LLOYD'S.

127.    Defendants' actions weaken and impair the distinctiveness of LLOYD'S OF LONDON and LLOYD'S.

128.    Defendants willfully seek to trade on and interfere with Lloyd's reputation.

129.    Defendants willfully seek to cause dilution of LLOYD'S OF LONDON and LLOYD'S.

130.    Defendants' actions are the direct and proximate harm to the marks LLOYD'S OF LONDON and LLOYD'S.

131.    Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London" and "Certain Underwriters at Lloyds London," "Lloyd's of London," or "Lloyd's."

132.    Because Defendants actions were willful, Plaintiffs are entitled to compensatory damages, treble damages, and the costs of bringing this action, including attorney's fees.

## Claim V
## Intentional Interference with Business Relations
### (Texas State Law)

133.    The foregoing paragraphs are incorporated by reference, as if fully restated herein.

134.    Ramirez is aware of the Corporation and Lloyd's America's business relationships with insureds, who rely on the reputation and trustworthiness of the Lloyd's name. Ramirez is also aware of the Corporation and Lloyd's America's professional relationships with attorneys and appraisers.

135.    Ramirez acted intentionally and willfully to interfere with these relationships.

136.    Ramirez's actions are the direct and proximate cause of harm to Plaintiffs.

137.    Plaintiffs are entitled to compensatory damages and court costs.

138.    Because of the equities in this matter, Plaintiffs are entitled to their attorney's fees.

139.    Because Defendants' actions were done with malice and/or gross negligence, Plaintiffs are entitled to exemplary damages.

140.    Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from interfering with Plaintiffs' business relations.

### Claim VI
### Defamation by Defendant Eric Ramirez
### (Texas State Law)

141.    The foregoing paragraphs are incorporated by reference, as if fully restated herein.

142.    Ramirez has and is making false statements of fact regarding Plaintiffs, including that the insurance policies written by underwriters at Lloyd's London were unlawful because Plaintiffs were not authorized to do business in "several states" and that Plaintiffs have committed crimes.

143.    These statements were published to third parties and are not privileged.

144.    These statements were made with reckless disregard, as Ramirez sought to harm Plaintiffs because of his unfounded anger and did not care as to the truth of the statements made.

145.    These statements are defamation per se as they damage Plaintiffs in their profession and occupation and because they accuse Plaintiffs of committing a crime.

146.    Ramirez's statements are the direct and proximate cause of harm to Plaintiffs.

147.    Defendants are entitled to recovery special damages, compensatory damages, and damages for loss of reputation.

148.    Because Ramirez's actions were done with malice and/or gross negligence, Plaintiffs are entitled to exemplary damages.

PD.43694205.1

149.    Defendants are entitled to a preliminary and permanent injunction prohibiting Defendant from repeating these false allegations.

### Claim VII
### Preliminary Injunction
### (All Claims)

150.    The foregoing paragraphs are incorporated by reference, as if fully restated herein.

151.    As set forth above, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London," "Certain Underwriters at Lloyds London," "Lloyd's of London," or "Lloyd's" because the use of such terms is federal trademark infringement, state law trademark infringement, trademark dilution, and false advertising. Plaintiffs are also entitled to a preliminary injunction prohibiting Defendants from interfering with Plaintiffs' business relations. Plaintiffs are entitled to a preliminary injunction prohibiting Ramirez from continuing to make defamatory statements regarding Plaintiff's business and falsely accusing Plaintiffs of crimes. Plaintiffs are likely to succeed on the merits of each of their claims.

152.    Plaintiffs have suffered an irreparable injury because of Defendants' deliberate actions. Since the 17th Century, Plaintiffs have built goodwill among consumers for the underwriting of insurance. Defendants' false implication that they are associated with or affiliated with Plaintiffs destroys that goodwill.

153.    Likewise, Defendants actions in interfering with Plaintiffs' business relations harms those on-going relations and weakens Plaintiffs' goodwill.

154.    Ramirez's defamation is directed at Plaintiffs' business and falsely accuses Plaintiffs of committing crimes. Texas has created a claim for defamation per se because such allegations are presumed to harm those against whom the allegations are made.

155.    The balance of equities favors the Plaintiffs. Defendants' actions have no support in the law and serve only to destroy the centuries of work that have built the goodwill that Plaintiffs enjoy. Granting a preliminary injunction will only serve to ensure fair competition in the marketplace.

156.    The issuance of a preliminary injunction is in the public interest. The public interest has a strong interest in upholding trademark law and prohibiting false advertising. Trademarks help the public understand the value and quality of the services being offered. Truthful advertising ensures that the public is not unknowingly duped into purchasing services of a lesser quality.

<u>**REQUEST FOR RELIEF**</u>

Plaintiffs Corporation of Lloyd's and Lloyd's America, Inc. ask this Court for:

A.    A preliminary and permanent injunction prohibiting Defendants from using the terms "Certain Underwriters of Lloyds London," "Certain Underwriters at Lloyds London," "Lloyd's of London," or "Lloyd's;"

B.    A preliminary and permanent injunction prohibiting Defendants from creating, registering, or operating any company using the terms or any portion or combination of the terms "Certain Underwriters of Lloyds London," "Certain Underwriters at Lloyds London," "Lloyd's of London," or "Lloyd's" or otherwise interfering with Plaintiffs' business relations;

C.    A preliminary and permanent injunction prohibiting Defendants from holding themselves out to have authorization to act on behalf of or having any affiliation sponsorship, or approval of Plaintiffs, any Underwriters of insurance policies issued through the Lloyds marketplace, or any affiliation with any of them;

D.    A preliminary and permanent injunction prohibiting Defendants from interfering with Plaintiffs' business relations;

E.     A preliminary and permanent injunction prohibiting Defendant Ramirez from repeating his defamatory statements;

F.     A finding that this case is an extraordinary case under the Lanham Act;

G.     Damages in amount to be determined at trial;

H.     Treble damages in addition to any damage amounts determined at trial;

I.     An award of Defendants' profits;

J.     An award of the costs of bringing this litigation, including attorney's fees;

K.     An order that Defendants engage in corrective advertising as ordered by this Court;

L.     Exemplary damages;

M.     Pre- and post-judgment interest; and

N.     Any such other relief, equitable or legal, as this Court deems just and proper.


Respectfully submitted,

*/s/ Blake A. Bailey*
Blake A. Bailey
Attorney in Charge
Texas State Bar No. 01514700
S.D. Tex. Bar No.16747
Paige C. Jones
Texas State Bar No. 24054609
PHELPS DUNBAR LLP
2102 E. State Hwy. 114, Suite 207
Southlake, Texas 76092
Telephone:  (817) 305-0332
Facsimile:  (817) 488-3214
Email:  blake.bailey@phelps.com
        paige.jones@phelps.com

**ATTORNEYS FOR PLAINTIFFS**

**OF COUNSEL:**

Andrew W. Coffman
S.D. Tex. Bar No. 3860598
PHELPS DUNBAR LLP
105 East Main Street, Suite 201
Tupelo, MS 38804
Telephone: 662-842-7907
Telecopier: 662-842-3873
Email: andrew.coffman@phelps.com